UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
JOHN B. MURPHY, et al.,          :          10 Civ. 6055 (LAP)
                                 :
            Plaintiffs,          :          Opinion & Order
                                 :
      v.                         :
                                 :          ┌─────────────────────────────┐
INTERNATIONAL BUSINESSS          :          │ **USDC SDNY**               │
MACHINES CORP.,                  :          │ **DOCUMENT**                │
                                 :          │ **ELECTRONICALLY FILED**    │
            Defendant.           :          │ **DOC #:** _____  │
------------------------------x             │ **DATE FILED:** 2/21/12     │
                                            └─────────────────────────────┘

LORETTA A. PRESKA, Chief United States District Judge:

     Plaintiffs John B. Murphy and Brendan M. Murphy

("Plaintiffs") bring this action against their former employer

International Business Machines Corp. ("IBM" or "Defendant")

alleging that IBM violated its fiduciary duty to them under the

Employee Retirement Income Security Act ("ERISA") by adopting

certain pension plan amendments that violated ERISA's

requirements.  IBM moves to dismiss the action under Federal

Rule of Civil Procedure 12(b)(6).  Plaintiffs oppose Defendant's

motion and in the alternative request leave to amend further

their Amended Complaint ("Am. Compl.").  For the reasons below,

Defendant's motion is GRANTED with prejudice, and Plaintiffs'

request to amend their pleadings is DENIED as futile.

I.   BACKGROUND

The Court takes as true the following factual allegations in the complaint and draws all reasonable inferences in favor of Plaintiff.  Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

A.   Plaintiffs' Allegations

Plaintiffs were employees of IBM's Global Network Services (an IBM subsidiary) until May 1999, when they became employees of AT&T, Inc. ("AT&T") in connection with IBM's sale of Global Network Services to AT&T.  (Am. Compl. ¶¶ 4-5, 12, 15.) Plaintiffs are both participants in and beneficiaries of IBM's "Pension Benefits Plan" (the "Plan") with "vested benefits" pursuant to the Plan.  (Id. ¶ 6.)  The vested interest at the time of the transfer of employment to AT&T was a "defined benefits plan, and provides benefits upon retirement of approximately 40% of each Plaintiff's average income for his three (3) highest earning years."  (Id. ¶ 13-14.)

In approximately May 1999, IBM announced that it was instituting a Plan modification for all employees, including those recently transferred to AT&T.  (Id. ¶ 15.)  The modification rescinded a new "cash balance plan" for all current IBM employees over the age of 40 with more than ten years of service and returned them to a defined benefits plan.  (Id. ¶ 16.)  By contrast, those former employees now working for AT&T, including Plaintiffs, were required to remain in the cash

2

balance plan and continued to receive IBM Plan pension benefits in the form of accrued interest on their pensions.  (Id.)  The Plan modification also created a new retirement benefit formula which provided each former employee a "buy-out option, including a lump sum payment."  (Id. ¶ 17.)  Plaintiffs allege that this modification was "unilaterally imposed by IBM" and had the "net effect of substantially reducing said former employees' accrued and vested pension benefits."  (Id.)

In or about September 1999, Plaintiff Brendan M. Murphy elected to receive a lump sum pension buy-out under the modified Plan in the amount of $62,000.  (Id. ¶ 19.)  In or about January 2000, Plaintiff John B. Murphy elected to receive a lump sum pension buy-out under the modified Plan in the amount of $116,000.  (Id. ¶ 18.)  Both Plaintiffs allege that these decisions were made "under duress and coercion, and a lack of understanding of [their] legal rights, and not fully informed of the substantial amount of the reduction in [their] pension value (caused by IBM's unilateral plan modification)."  (Id. ¶¶ 18-19.)  Both Plaintiffs further allege "upon information and belief" that these lump sum payments were "far less than the true and fair value of [their] accrued and vested pension interest for [their] long-term employment with IBM."  (Id.)

To wit, Plaintiffs allege that IBM breached its fiduciary duties under ERISA ¶¶ 404(a) and 409 by making the 1999 Plan

amendments. (Id. ¶¶ 63-65.)  In addition to the claimed reduction in the value of their vested pensions, Plaintiffs also allege that the cash balance formula adopted by IBM in 1999 fails to comply with ERISA's anti-backloading rules, see 29 U.S.C. § 1054(b)(1) (id. ¶¶ 43-52); that the lump sum payout also produced unlawful backloading and is therefore "an illegal 'whipsaw'" (id. ¶¶ 53-54); that the cash balance formula constitutes unlawful age discrimination under ERISA, see 29 U.S.C. ¶ 1054(b)(1)(H) (id. ¶¶ 60-62); and that by failing to notify Plan participants of such deficiencies, IBM failed to comply with ERISA's notice requirements, see 29 U.S.C. § 1054(h) (id. ¶¶ 55-59).  As to IBM's notice requirements under ERISA, Plaintiffs specifically allege that IBM never informed them of their right to file an action in court, (id. ¶ 27); that IBM delivered summary plan descriptions after 1999 which were "misleading and materially false and inaccurate" and failed to disclose the reductions in benefits under the Plan as modified, (id. ¶¶ 28, 31, 34); and that IBM refused to respond to Plaintiffs' numerous requests to Human Resources for comparison data between the former and modified Plan, (id. ¶¶ 32-33).

B.   Cooper v. IBM

In 1999, a class action lawsuit under ERISA was filed against IBM and the Plan in the United States District Court for the Southern District of Illinois.  See Cooper v. IBM Personal

4

Pension Plan, No. 99-829 (S.D. Ill. Nov. 1, 1999).  The Cooper
class alleged that the IBM pension formulas adopted in 1995 and
in 1999 violated ERISA's anti-backloading and age discrimination
provisions.  (See Defendant's Memorandum of Law in Support of
Motion to Dismiss Amended Complaint ("Def. Mem.") at 2-3;
Declaration of Jeffrey G. Huvelle ("Huvelle Decl."), Ex. A.)[1]
The class argued that (1) the conversion of the plan to a cash
balance formula, effective July 1, 1999, was age-discriminatory
because it subjected older employees to disproportionately
longer periods of "wearaway," a term that refers to the period
of time in which an employee earns no additional pension
benefits, and (2) the "always cash balance" formula used to
determine participants' opening account balances at the time of
conversion discriminated on the basis of age in violation of
ERISA § 204(b)(1)(H).  (See id.)

---

[1] The Court takes judicial notice of the publicly available and
relevant filings and Orders in the Cooper litigation for the
limited purposes of establishing the "fact of such litigation
and related filings," Int'l Star Class Yacht Racing Ass'n v.
Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998), and
in order to determine "the preclusive effect of [the] prior
judgment for res judicata purposes," Sure-Snap Corp. v. State
Street Bank and Trust Co., 948 F.2d 869, 872 (2d Cir. 1991).
Moreover, this Court may take judicial notice of any fact "that
can be accurately and readily determined from sources whose
accuracy cannot reasonably be questioned."  See Fed. R. Evid.
201(b).  The Court has reviewed Plaintiffs' arguments against
judicial notice of the Cooper litigation documents, (Plaintiff's
Memorandum of Law in Opposition to Defendant's Motion to Dismiss
the Amended Complaint ("Opp.") at 12-13,) and finds them to be
without merit.

In September 2001, the Illinois district court certified a Rule 23(b)(1) plaintiff class consisting of "[a]ll individuals who have participated in the IBM Personal Pension Plan at any time after December 31, 1994."  (Def. Mem. at 3; Huvelle Decl., Ex. B.)  On July 31, 2003, the district court granted the class summary judgment on all of its claims, including its claim that the Plan's cash balance and "always cash balance" formulas discriminated on the basis of age in violation of ERISA § 204(b)(1)(H) and that the "Pension Credit Formula," which was the Plan's benefit prior to the adoption of the cash balance formula, violated both the anti-backloading rules (§ 204(b)(1)) and the age discrimination rule (§ 204(b)(1)(H)).  See generally Cooper v. IBM, 274 F. Supp. 2d 1010 (S.D. Ill. 2003).  Before proceeding to the remedies phase, the parties entered into a settlement.  (See Def. Mem. at 3.)

Under the terms of the Cooper settlement, IBM agreed to provide the class with supplemental benefits (together with attorneys' fees) valued at or about $314 million.  In turn, the plaintiff class released IBM from all claims that were or could have been asserted in the lawsuit, except the claims that the cash balance formula and the "always cash balance formula" violate ERISA § 204(b)(1)(H) (age discrimination).  Finally, the parties agreed that (1) IBM would appeal the district court's age discrimination rulings with respect to these two formulas,

6

(2) that the class would receive additional relief if the
rulings were upheld, but (3) the class would receive no
additional relief if the rulings were reversed.  (See Huvelle
Decl., Ex. C); see also Cooper v. IBM, No. 99-829, 2005 WL
1981501, at *1-2 (S.D. Ill. Aug. 16, 2005) (summarizing
settlement terms).[2]  On August 16, 2005, the district court
approved the settlement and entered a final judgment in
accordance with its terms.  (See Def. Mem. at 4; Huvelle Decl.,
Ex. D.)  IBM then successfully appealed the district court's
holdings on the ERISA age discrimination claims; the Court of
Appeals for the Seventh Circuit held that cash balance plans do
not violate ERISA.  See generally Cooper v. IBM Personal Pension
Plan, 457 F.3d 636 (7th Cir. 2006); accord Hirt v. Equitable
Retirement Plan, 533 F.3d 102 (2d Cir. 2008).

    Plaintiffs were at all times members of the Cooper class
and received notice of the class action settlement on or about
October 11, 2005.  (Am. Compl. ¶¶ 9-11, 20-21.)  Plaintiffs have
since received minimum annual annuities from IBM in connection
with the settlement in Cooper.  (See Opp. at 10 (withdrawing
allegations to the contrary made in the Amended Complaint at ¶¶
20-21).)

_____

[2] Under the terms of the settlement agreement, the plaintiff
class would have received additional relief of some $1.4 billion
(present value) in the event the Court of Appeals for the
Seventh Circuit upheld the district court's determination on the
ERISA age discrimination claims.  (See Def. Mem. at 4 n.1.)

C.   <u>Plaintiffs' 2005 Lawsuit</u>

On October 31, 2005, Plaintiffs, represented by their counsel in this action, filed suit in the Southern District of New York against IBM asserting that IBM violated its fiduciary duties under ERISA and committed other ERISA violations in connection with the 1999 Plan amendments.  (<u>See</u> Huvelle Decl., Ex. E.)[3]  The complaint also alleged that the cash balance formula discriminated against Plaintiffs and others on the basis of age.  (<u>Id.</u>)  Plaintiffs never served this complaint on IBM. (Def. Mem. at 4.)

II.  DISCUSSION

In its motion <u>sub judice</u>, IBM argues that Plaintiffs' Amended Complaint fails for three reasons.  First, IBM argues that Plaintiffs' claims are time-barred under the ERISA statute. Second, IBM argues that Plaintiffs' claims are barred by the doctrine of <u>res judicata</u> and the <u>Cooper</u> settlement and release of IBM.  Finally, IBM argues that the Amended Complaint fails to state a fiduciary-duty claim because ERISA's fiduciary provisions do not apply to the <u>design</u> of a pension plan.  (See Def. Mem. at 1.)  The Court addresses these arguments in turn.

---

[3] The Court takes judicial notice of the publicly available and relevant filings from 2005 for the limited purpose of establishing the "fact of such litigation and related filings." <u>See</u> <u>Int'l Star Class Yacht Racing Ass'n</u>, 146 F.3d at 70.

A.   <u>Legal Standard</u>

In assessing a motion to dismiss, the Court must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the Plaintiff's favor.  <u>Goldstein</u>, 516 F.3d at 56.  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A pleading that offers "labels and conclusions" or "a formalistic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 557).  Moreover, any claims sounding in fraud also must meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b).  Such claims must state "with particularity the circumstances constituting [the] fraud."  <u>See</u> Fed. R. Civ. P. 9(b).

B.   <u>Plaintiffs' ERISA Claims are Time-Barred</u>

The Court agrees with Defendant that Plaintiffs' direct claims under the ERISA statute are time-barred.  A claim for breach of fiduciary duty asserted under ERISA §§ 502(a)(2) and

9

409 must be commenced within the earlier of "(1) six years after

. . . the date of the last action which constituted a part of

the breach or the violation" or "(2) three years after the

earliest date on which the plaintiff had actual knowledge of the

breach or violation."  See ERISA § 413, 29 U.S.C. § 1113.  "[A]

plaintiff has 'actual knowledge of the breach or violation' . .

. when he has knowledge of all material facts necessary to

understand that an ERISA fiduciary has breached his or her duty

or otherwise violated the Act."  Caputo v. Pfizer, Inc., 267

F.3d 181, 193 (2d Cir. 2001).  There is also a limited exception

to these time limitations under ERISA § 413 if a plaintiff can

make out a claim of fraud or concealment.  See 29 U.S.C. § 1113.

This exception permits a plaintiff to bring suit within six

years of "discovery" of a "breach or violation" where such

violation has previously been concealed by the Defendant.

Caputo, 267 F.3d at 190.  Applying any of these formulations,

however, Plaintiffs' claims under the ERISA statute are time-

barred.

     First, Plaintiffs demonstrated "actual knowledge" of their

claim for a breach of fiduciary duty under ERISA when they filed

(but did not serve) a complaint containing those exact

allegations against IBM on October 31, 2005.  (See Huvelle

Decl., Ex E.)  The complaint alleged, among other things, that

IBM violated its fiduciary duties and committed other ERISA

10

violations and that the cash balance formula discriminated against Plaintiffs on the basis of age.  (Id.)  Under these circumstances the Court easily finds that Plaintiffs had "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act," Caputo, 267 F.3d at 193, in October 2005, more than four years before filing the instant action in August 2010.  Plaintiffs do not meaningfully dispute this point.  (See Opp. at 2-5.)  Second, Because ERISA makes clear that the earlier of the two limitations periods shall always apply (whether six years from "the last action which constituted a part of the breach or the violation" or three years from when Plaintiffs had "actual knowledge of the breach or violation," see ERISA § 413, 29 U.S.C. § 1113), this Court need not consider any colorable claim that IBM committed an ongoing violation whose "last action" was within the six-year statute of limitations.

Instead, Plaintiffs allege that IBM concealed the true nature of its ERISA violations and Plaintiffs should therefore receive the benefit of the six-year "discovery" exception in ERISA § 413 for fraud and concealment.  (See Opp. at 2-5.) Plaintiffs specifically allege that IBM failed to comply with ERISA's requirements regarding notice of a potential cause of action.  (Am. Compl. ¶¶ 23-27, 36.)  Plaintiffs further allege

that IBM "numerous times thereafter" sent summary plan descriptions to Plaintiffs "which were misleading and materially false and inaccurate by, inter alia, failing to provide any detailed analysis as to the amount of the reductions of the new cash benefit as opposed to the previously existing defined benefit plans." (Id. ¶ 31.)  Plaintiffs also allege that IBM failed "on numerous occasions" to provide them with requested comparable benefit plan data "and thus deliberately concealed this information from Plaintiffs." (Id. ¶¶ 32-33.)  Plaintiffs assert that, taken together, IBM's actions "prevented plan participants from understanding:  (1) that the conversion to a cash benefit plan decreased the rate of benefits accrual as participants age; (2) that participants' benefits were lower under the cash-balance plan formula than under the previous defined benefits plan; and (3) that the conversion to a cash-balance formula created a wear-away effect, which prevented employee's pension benefits from growing until their benefits calculated under the cash-balance plan equaled their accrued benefits under the traditional defined-benefits plan." (Id. ¶ 35.)  Therefore, Plaintiffs argue, they are entitled to equitable tolling and/or application of the ERISA § 413 six-year "discovery" exception to the standard statute of limitations. (See id. ¶¶ 36, 38-40; see also Opp. at 2-5.)

The Court must reject this argument.  The ERISA "discovery"
exception for fraud and concealment only applies where a
defendant either "breached its duty by making a knowing
misrepresentation or omission of a material fact to induce an
employee/beneficiary to act to his detriment" or "engaged in
acts to hinder the discovery of a breach of fiduciary duty."
Caputo, 267 F.3d at 190.  "To get the advantage of the six-year
statute of limitations" under Caputo, Plaintiffs must "plead
fraud with the requisite particularity."  Id. at 191 (citing
Fed. R. Civ. P. 9(b)).  Plaintiffs must (1) "specify the time,
place, speaker, and content of the alleged misrepresentations,"
(2) "explain how the misrepresentations were fraudulent," and
(3) "plead those events which give rise to a strong inference
that the defendant[] had an intent to defraud."  Id.  Plaintiffs
have failed to satisfy that burden here.

     First, Plaintiffs' allegation that IBM affirmatively made
"false and inaccurate" statements regarding the cash balance
plan, (Am. Compl. ¶ 31,) is conclusory and therefore
insufficient.  A fraud claim that is entirely conclusory and
unsupported by assertions of facts cannot satisfy the heightened
particularity requirement of Rule 9(b).  See Iqbal, 129 S.Ct. at
1951; Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986).
Plaintiffs' claim is in essence no more than a complaint that
IBM's summary plan descriptions were insufficiently detailed.

(Am. Compl. ¶¶ 31, 33.)  Plaintiffs do not point to any specific document or communication which they allege with particularity contained a specific misrepresentation or omission of a material fact or that gives rise to a strong inference that that IBM intended to defraud them.

Second, where an allegation of fraud rests on an omission, as here, Plaintiffs "must allege facts giving rise to a duty to disclose." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd., 85 F. Supp. 2d 282, 296 (S.D.N.Y. 2000).  While it is certainly true that ERISA regulation 29 C.F.R. § 2520.102-2 requires that benefits reductions or modifications described in summary plan descriptions "not be minimized, rendered obscure, or otherwise made to appear unimportant," (see Am. Compl. ¶ 30,) Plaintiffs do not identify with any particularity which portions of which summaries they allege were defective or in what way.  Instead, Plaintiffs complain generally that these summaries were not composed in sufficiently pejorative terms. But Plaintiffs do not allege any facts suggesting that IBM had a specific duty (under ERISA or otherwise) to provide a more detailed description than they did.  In Oechsner v. Connell Ltd. Partnership, 283 F. Supp. 2d 926 (S.D.N.Y. 2003), for example, the court heard a similar allegation that defendants made a material omission when they "did not provide [plaintiffs] with a side-by-side comparison of the two benefit plans."  See id. at

14

934.  There, the court observed that a defendant's failure to do

so did not in itself constitute fraudulent concealment.  See id.

This Court agrees.

Plaintiffs' allegations regarding a lack of responsiveness

from IBM's Human Resources department, (see Am. Compl. ¶¶ 31-

32,) fail for the same reason.  These allegations fail to

"specify the time, place [and] speaker," as required under Rule

9(b) and fail to "give rise to a strong inference that the

defendant[] had an intent to defraud."  Caputo, 267 F.3d at 191;

see also Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir.

1995) ("[P]laintiffs must allege facts that give rise to a

strong inference of fraudulent intent.").  For a corporate

defendant such as IBM, "pleaded facts must create a strong

inference that someone whose intent could be imputed to the

corporation acted with the requisite [intent to defraud]."

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital

Inc., 531 F.3d 190, 195 (2d Cir. 2008).  Moreover, given the

very existence of the summary plan descriptions, Plaintiffs

cannot point to their interactions with Human Resources as

evidence that this is a case in which the "facts are peculiarly

within the opposing party's knowledge."  See, e.g., Wexner v.

First Manhattan Co., 902 F.2d 169, 172 (2d. Cir. 1990) ("This

exception to the general rule must not be mistaken for license

to base claims of fraud on speculation and conclusory

15

allegations.  Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.")  The Court simply cannot infer from the facts pleaded in the Amended Complaint that IBM acted with the requisite intent to defraud Plaintiffs.

Third, Plaintiffs reliance on IBM's purported failure to comply fully with ERISA's notice requirements, (Am. Compl. ¶¶ 23-27, 36,) is misplaced.  Plaintiffs cite sections of ERISA that set forth "minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants" and require "written or electronic notification" in the event a participant's administrative claim for benefits is denied, including "a statement of claimant's right to bring a civil action under section 502(a) of [ERISA] following an adverse benefit determination on review." (See Am. Compl. ¶¶ 22-27); see also 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(a)-(g).  These sections of the ERISA statute are entirely irrelevant to Plaintiffs' claims in this case.  The notice requirements described therein apply only in cases where an ERISA plan participant files "a claim for benefits" with that plan and that claim is denied on administrative review.  See, e.g., 29 C.F.R. § 2560.503-1(e)(defining "claim for benefits" as "a request for a plan benefit or benefits made by a claimant in accordance with

16

a plan's reasonable procedure for filing benefit claims"). Here, Plaintiffs do not allege that IBM failed to give adequate notice of a civil remedy upon a denial of benefits under the Plan as modified.  Instead, Plaintiffs take issue with IBM's Plan modification itself.  Accordingly, the notice requirements in 29 C.F.R. § 2560.503-1(a)-(g) are inapplicable here and do not create a duty on IBM's part to make any further disclosure regarding the 1999 Plan modification.

The Court finds therefore that Plaintiffs have failed adequately to allege facts suggesting that IBM "breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment" or "engaged in acts to hinder the discovery of a breach of fiduciary duty." See Caputo, 267 F.3d at 190.  The Court further finds that Plaintiffs have failed to "plead those events which give rise to a strong inference that the defendant[] had an intent to defraud." Id. at 191. Accordingly, the standard three-year ERISA statute of limitations applies, and Plaintiffs' claims are time-barred for the reasons described above.

Having determined that Plaintiffs' claims are time-barred, the Court briefly addresses Plaintiffs' alternative request that it be permitted to amend its Amended Complaint again in an effort to establish the fraud or concealment allegations

17

necessary for the six-year "discovery" statute of limitations. This Court is free under Fed. R. Civ. P. 15(a) to grant such leave to amend "when justice so requires."  It is, however, within the sound discretion of this Court to deny such leave. See, e.g., McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  Here, the Plan modification of which Plaintiffs complain took place in 1999, Plaintiffs took their lump sum pay-outs in 1999 and 2000, Plaintiffs received notice of the Cooper settlement and commenced their own lawsuit containing substantially similar allegations in October 2005, and then commenced this action in 2010.  Plaintiffs have amended this complaint once already in response to IBM's detailed letter of September 2010 laying out its deficiencies, including the statute of limitations and fraud or concealment issues.  (See Defendant's Reply Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Def. Reply Mem.") at 5.)  In short, Plaintiffs have already had an extraordinarily lengthy opportunity to craft and re-craft the allegations in this complaint.  For the reasons described above, the Court feels it is overwhelmingly unlikely that Plaintiffs can further amend their complaint to cure its deficiencies, particularly on the issue of fraudulent intent.  For this reason, together with its holding on the issue of res judicata and preclusive nature of the Cooper litigation, infra, the Court concludes that such

leave to amend the Amended Complaint further is not in the interests of justice, see Fed. R. Civ. P. 15(a), and is therefore denied.

      C.   Res Judicata and the Cooper Release

     Even if Plaintiffs' claims were not untimely under ERISA, they are otherwise barred by the claim preclusive effects of the Cooper litigation, settlement, and release.  Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980); see also Burges v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994).  The doctrine applies where (1) the earlier action resulted in an adjudication on the merits, (2) the party asserting the claim, or those in privity with the party, were parties to the earlier action, and (3) the claim asserted in the later action was or could have been asserted in the earlier action.  Monahan v. N.Y.C. Dep't of Corrections, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted).  The Court finds that each of these requirements has been satisfied in this case.

     First, Cooper was unquestionably an adjudication on the merits.  In August 2005, the district court entered a final judgment (1) holding that the IBM Plan's cash balance and "always cash balance" formulas violated ERISA's pension age-

19

discrimination prohibitions, (2) approving the settlement of the remaining claims as "fair, reasonable, and adequate," and (3) dismissing the remaining claims with prejudice in accord with the terms of the settlement.  (Huvelle Decl., Ex. D.)  IBM then successfully appealed the district court's holdings on the ERISA age discrimination claims when the Court of Appeals for the Seventh Circuit held that cash balance plans do not violate ERISA.  See generally Cooper v. IBM Personal Pension Plan, 457 F.3d 636 (7th Circuit 2006).

Second, Plaintiffs concede they were at all times members of the Cooper class and received notice of the class action settlement on or about October 11, 2005.  (Am. Compl. ¶¶ 9-11, 20-21.)  Plaintiffs have since received minimum annual annuities from IBM in connection with the settlement in Cooper.  (See Opp. at 10 (withdrawing allegations to the contrary made in the Amended Complaint at ¶¶ 20-21).)

Third, the claims now raised by Plaintiffs undoubtedly were or could have been asserted by the Cooper class.  The Cooper class asserted that the Plan's cash balance and "always cash balance" formulas discriminated on the basis of age in violation of ERISA § 204(b)(1)(H) and that the "Pension Credit Formula," which was the Plan's benefit prior to the adoption of the cash balance formula, violated both the anti-backloading rules (§ 204(b)(1)) and the age discrimination rule (§ 204(b)(1)(H)).

See generally Cooper v. IBM Personal Pension Plan, 274 F. Supp. 2d 1010 (S.D. Ill. 2003).  Plaintiffs now claim that the cash balance formula adopted in 1999 constitutes unlawful age discrimination under ERISA § 204(b)(1)(H) and contend that the cash balance formula is impermissibly backloaded, in violation of ERISA § 204(b)(1)(A)-(C).  (See Am. Compl. ¶¶ 43-45, 60-62.) These issues were fully litigated in the Cooper litigation, with IBM ultimately prevailing before the Seventh Circuit Court of Appeals.

Moreover, the Cooper class released IBM from any additional claims that could have been brought in the litigation.  (See Huvelle Decl., Ex. C (Class Action Settlement), at 40.) "Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief." Wal-Mart Stores, Inc. v. VISA U.S.A., Inc., 396 F.3d 96, 106 (2d Cir. 2005).  The Cooper release provides in pertinent part:

> Plaintiffs and each Settlement Class Member will be deemed to forever release and discharge [IBM] . . . from:  Any and all actions, causes of action, claims . . . and suits whatsoever . . . whether based on statute, ordinance, regulation, constitutional provision, common law, contract, the terms of the Plan or any other source (including but not limited to claims of age discrimination under ERISA, the ADEA, or the Code), whether past, present, or future, known or unknown, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that were asserted in [Cooper], that could have been asserted in the [Cooper] Litigation relating to the Plan, or that arise out of or relate to, in whole or in part, any of the facts, events,

21

> acts, omissions, transactions, or occurrences that
> were directly or indirectly alleged, asserted or
> described in the Litigation.

(Huvelle Decl., Ex. C, at 40 (emphasis added).)  Plaintiffs'
claims in the instant case are "based on statute" and "arise out
of or relate to . . . the facts, events, actions, omissions,
transactions, or occurrences that were directly or indirectly
alleged, asserted or described in [Cooper]."  (See id.)  Because
Plaintiffs' remaining claims not already barred by res judicata
arise out an "identical factual predicate" as the Cooper claims,
see Wal-Mart Stores, Inc., 396 F.3d at 107, they are barred by
the Cooper settlement and release.

Having conceded that they were members of the Cooper class
and received notice of the settlement, (Am. Compl. ¶¶ 9-11, 20-
21,) Plaintiffs now seek to collaterally attack the Cooper
settlement and release on the grounds that they were
inadequately represented in the Cooper litigation and received
inadequate notice of the particulars of settlement.  (See, e.g.
id. ¶¶ 10-11; Opp. at 8-10.)  "Res judicata generally applies to
bind absent class members except where to do so would violate
due process."  Stephenson v. Dow Chemical Co., 273 F.3d 249, 260
(2d Cir. 2001).  Class members will be bound by a prior judgment
"unless the party attacking the judgment can show that the class
was inadequately represented" in the prior case.  Gonzalez v.
Cassidy, 474 F.2d 67, 75 (5th Cir. 1973) (citing Sam Fox

Publishing Co. v. United States, 366 U.S. 683, 691).  To avoid
being bound by the terms of the Cooper settlement, Plaintiffs
must plead facts that, if true, would plausibly call into
question the "fundamental fairness" of applying its settlement
terms to them.  See Wolfert v. Transamerica Home First, Inc.,
439 F.3d 165, 170-75 (2d Cir. 2006); see generally Iqbal, 129 S.
Ct. at 1949-50.  In evaluating those facts, this Court may "draw
on its experience and common sense."  Iqbal, 129 S. Ct. at 1940.
Having done so, this Court concludes that Plaintiffs have failed
to plead a plausible lack of "fundamental fairness" in applying
to them the terms of the Cooper settlement.

    First, the Court rejects Plaintiffs' argument that they
were inadequately represented in the Cooper litigation.
Plaintiffs assert "upon information and belief" that they (as
well as all other former IBM employees transferred to AT&T in
1999) did not receive adequate representation in the Cooper
litigation but plead no concrete facts from which this Court may
infer that fact.  (See, e.g., Am. Compl. ¶ 10.)  To the
contrary, the Cooper court certified a Rule 23(b)(1) class which
clearly included Plaintiffs, consisting of "[a]ll individuals
who have participated in the IBM Personal Pension Plan at any
time after December 31, 1994."  (Def. Mem. at 3; Huvelle Decl.,
Ex. B.)  The court found further that the class members "have at
all times been adequately represented by the Class

23

Representatives and Class Counsel." (Huvelle Decl, Ex. D, ¶ 1.)
Moreover, e-mail correspondence between Cooper class counsel and
IBM's counsel that is offered as an exhibit to both IBM's motion
and Plaintiffs' opposition makes clear that the sub-
classification of the former IBM employees was specifically
addressed as part of the settlement discussions, and it was
agreed it would be "taken into account in the true-up process"
and discussed with Judge Murphy. (Huvelle Decl., Ex. F; Opp.,
Ex. B.)[4]  Against this background, Plaintiffs simply have not
pled any facts giving rise to even the slightest inference of
inadequate representation.

    Most importantly, Plaintiffs fail to state in any
meaningful way why their legal interests diverge from those of
the Cooper class.  In fact, Plaintiffs neither identify the ways
in which the legal interests of the former and then-current IBM

---

[4] The Court takes judicial notice of this e-mail correspondence
for the limited purpose of establishing the existence of
specific settlement discussions focusing on the former IBM
employees.  Both parties submit identical copies of the
correspondence as accurate, and this Court may take judicial
notice of any fact "that can be accurately and readily
determined from sources whose accuracy cannot reasonably be
questioned." See Fed. R. Evid. 201(b).  The existence and
contents of this correspondence are not essential to the Court's
grant of IBM's motion to dismiss.  Nevertheless, as it is relied
upon by both parties in support of their various arguments (and
specifically by Plaintiffs in raising their claim of inadequate
notice), see Opp. at 10, Plaintiffs are not disadvantaged by
judicial notice in the same way discussed by the Court of
Appeals in Chambers v. Time Warner Inc., 282 F.3d 147, 153-55
(2d Cir. 2002).  For the same reason, IBM's motion need not be
converted into a Rule 56 motion for summary judgment.

employees diverged at the time of the Cooper settlement nor why Plaintiffs' own legal interests now diverge from the interests of those former IBM employees who make no quarrel with the Cooper settlement.  For this reason, Plaintiffs' reliance on the Court of Appeals' decision in Stephenson v. Dow Chemical is misplaced.  In Stephenson, a massive class action "purported to settle all future claims" regarding Agent Orange exposure, but provided recovery only for those individuals "whose death or disability was discovered prior to 1994," at which time the settlement fund was permitted to terminate.  Stephenson, 273 F.3d at 260-261.  When it was discovered that Agent Orange exposure could produce latent injuries, the Court of Appeals held that those plaintiffs who could not have learned of their injuries prior to 1994 (and were therefore not contemplated by the settlement at all) were not adequately represented in the original lawsuit.  See id. (discussing the "internal conflicts" of interest that arise where a single party purports to represent "both present and future claimants").  There is no comparable allegation made in Plaintiffs' Amended Complaint in this case.  The Court is therefore left to speculate what exact claim of inadequate representation Plaintiffs feel lacked "adversarial consideration" by the Cooper Court.  (See Opp. at 9 (citing Wolfert, 439 F.3d at 172).)  Moreover, unlike the Stephenson plaintiffs, the Cooper settlement specifically

25

contemplated Plaintiffs' damages, and Plaintiffs have received payments from the settlement funds.

Second, the Court rejects Plaintiffs' allegation that they received inadequate notice of the Cooper settlement.  Plaintiffs argue that while they received notice of the settlement generally, (Am. Compl. ¶¶ 20-21), they nonetheless received insufficient notice of "the impact of said settlement on each Plaintiff, and thus neither Plaintiff had a reasonable opportunity to opt out of it," (Am. Compl. ¶ 11).  Further, Plaintiffs argue that once the issue of Plaintiffs' "reclassification" arose (as discussed in the July 2005 correspondence between Cooper class counsel and IBM's counsel, supra), Plaintiffs were denied "new notice," a failure they deem "critical, as Plaintiffs were deprived of an opportunity to opt out of the settlement based on their reclassification." (Opp. at 10.)

The Court is not persuaded by these arguments.  First, Plaintiffs fail to explain in exactly what way the notice was inadequate or what specific information it lacked that it was otherwise required to include under Fed. R. Civ. P. Rule 23. Second, the Cooper court specifically determined that the notice "adequately described the relevant and necessary terms of the proposed Settlement Agreement" and "fully complied with Rule 23, was the best notice practicable, satisfied all constitutional

26

due process requirements, and provide[d] the Court with jurisdiction over the Class Members." (See Huvelle Decl., Ex. D, at ¶¶ 2-3; Def. Mem. at 9.); see also Caruso v. Candie's, Inc., 201 F.R.D. 306, 314-15 (S.D.N.Y. 2001) (rejecting a collateral challenge where a prior court had found notice to be adequate as a matter of law). Third, Plaintiffs fail to allege concrete facts or relevant law supporting their apparent theory that finalizing the reclassification issue with respect to the former IBM employees "several months after" counsel jointly submitted a motion for preliminary settlement approval violated Rule 23 or resulted in "fundamental unfairness." (See Opp. at 10.) Fourth, as such reclassification "inured to the benefit of class members, like Plaintiffs, who moved to AT&T in 1999," (Def. Reply Mem. at 8 n.2,) Plaintiffs fail to allege how they were in any way prejudiced in fact by said lack of notice. Finally, while Plaintiffs claim notice was inadequate because it did not permit them an opportunity to opt out of the Cooper class, no such opportunity existed, with or without notice. The Cooper class was certified as a Rule 23(b)(1) non-optout class action, (Def. Mem. at 3; Huvelle Decl., Ex. B,) and accordingly, no such option was available to Plaintiffs. See, e.g., Gonzalez, 474 F.2d at 74 n.12; Fed. R. Civ. P. 23(b)(1).

     The Court has considered the additional arguments raised by Plaintiffs on this issue and finds them to be without merit.

The Court therefore finds that Plaintiffs have failed to plead
facts that, if true, would plausibly call into question the
"fundamental fairness" of regarding Plaintiffs as bound members
of the Cooper class.  See Wolfert, 439 F.3d at 170-75; see
generally Iqbal, 129 S. Ct. at 1949-50.  Accordingly,
Plaintiffs' claims, even if timely, are barred by res judicata
and the preclusive effect of the Cooper settlement and release.

> D.   Plaintiffs Fail to State a Claim for Breach of
>      Fiduciary Duty under ERISA

Finally, the Court agrees that even if Plaintiffs' claims
were not time-barred or otherwise barred by res judicata and the
Cooper settlement and release, Plaintiffs have failed to state a
claim for a breach of fiduciary duty under the ERISA statute.
Generally, the mere "act of amending a pension plan does not
trigger ERISA's fiduciary provisions."  Hughes Aircraft Co. v.
Jacobson, 525 U.S. 432, 438 (1999) (citation omitted).
Employers enjoy "broad authority to amend a plan," and "ERISA's
fiduciary duty requirement simply is not implicated where [an
employer] makes a decision regarding the form or structure of
the Plan such as who is entitled to receive Plan benefits and in
what amounts, or how such benefits are calculated."  Id. at 442-
43; see also Flanigan v. Gen. Elec. Co., 242 F.3d 78, 87-88 (2d
Cir. 2001) ("fiduciary duties under ERISA [are] not triggered"
by a "corporate business decision").  Therefore, Plaintiffs'

allegation that IBM breached its fiduciary duty under ERISA §
404 by "convert[ing] its defined benefits pension plan into a
'cash balance plan'" and thereby "creat[ing] a new benefit
formula" is not in itself sufficient to state a claim.  (See Am.
Compl. ¶¶ 17, 51, 65.)

     To the extent Plaintiffs make more specific allegations of
fraud or misrepresentation in connection with the modification
of the Plan, (see, e.g., id. ¶¶ 31-33,) these claims suffer the
same failures of particularity and plausibility discussed in
II.B., supra.  For that reason, both of the cases cited by the
Plaintiffs on this point, Osberg v. Foot Locker, Inc., 656 F.
Supp. 2d 361 (S.D.N.Y. 2009) and Bilello v. JP Morgan Chase
Retirement Plan, 649 F. Supp. 2d 142 (S.D.N.Y. 2009), are
inapposite.  (See Opp. at 14-15.)  In both of those cases, the
court found that the plaintiff had stated a plausible claim for
exactly the sort of materially false or misleading statements or
omissions, plead with particularity, that are missing here.  In
Osberg, the court sustained a breach of fiduciary duty claim
where plaintiffs had also alleged that a specific, September 30,
1996 plan summary description's references to a "'greater-or'
option" and "initial account balance . . . calculated based on a
9% discount rate" were insufficiently detailed and therefore
violated ERISA § 102.  See Osberg, 656 F. Supp. 2d at 374-75.
In fact, the Osberg court specifically stated that

"[d]efendants' arguments in favor of dismissal of [the breach of fiduciary duty claim] fail in light of the survival of [the ERISA § 102 claim]." Id.  Likewise, in Bilello, the court sustained a claim for breach of fiduciary duty where the plaintiff had specifically identified misrepresentations or materially false "statements in two letters and a September 1990 Summary of Material Modification, all sent in connection with the 1989 Plan." Bilello, 649 F. Supp. 2d at 164.  Plaintiffs' generalized and highly conclusory allegations in this case are simply not comparable and do not therefore state a plausible claim for relief.  See Iqbal, 129 S. Ct. at 1949.

Lastly, while it is certainly true that an employer's failure to provide a required notice may be cognizable under ERISA's breach of fiduciary duty provisions, Bilello, 649 F. Supp. 2d at 166 (citing Weinreb v. Hospital for Joint Diseases Orthopaedic Inst., 404 F.3d 167, 171 n.1 (2d Cir. 2005)), such ERISA notice requirement(s) must obviously be germane to the notice failure alleged.  As described above, Plaintiffs rely on the notice provisions of ERISA § 402(a), 29 C.F.R. § 2560.503-1, which, for the reasons described in II.B., supra, are wholly irrelevant to Plaintiffs' claims in this case.  Because IBM's cash balance plan conversion and its adoption of the cash balance formula, without more, do not constitute breaches of a fiduciary duty, and Plaintiffs fail to allege with particularity

30

any further plausible breach of fiduciary duty under ERISA,

Plaintiffs' claim must fail as a matter of law.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss

the action [dkt. no. 11] is GRANTED with prejudice and

Plaintiffs' request to amend their pleadings is DENIED.  The

Clerk of the Court shall mark this action closed.


SO ORDERED.

Dated:     New York, New York
           February 21, 2012


*Loretta A. Preska*

LORETTA A. PRESKA
Chief U.S. District Judge